# No. 25-1523

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

KARNAIL SINGH,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Eastern District of Michigan, No. 2:13-cr-20551
Before the Honorable David M. Lawson

**BRIEF OF NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS, ASIAN AMERICANS ADVANCING JUSTICE | AAJC, AND IMMIGRANT DEFENSE PROJECT AS *AMICI CURIAE* IN SUPPORT OF DEFENDANT-APPELLANT'S PETITION FOR REHEARING EN BANC**

ETAN NEWMAN
NABILAH SIDDIQUEE
MANUEL VARGAS
Immigrant Defense Project
P.O. Box 1071
New York, NY 10008
Telephone: (646) 760-0591
nabilah@immdefense.org
etan@immdefense.org

BENTON C. MARTIN
*Sixth Circuit Vice-Chair,*
 *Amicus Committee*
*National Association of*
 *Criminal Defense Lawyers*
Federal Community Defender
613 Abbott Street, Suite 500
Detroit, Michigan 48226
Telephone: (313) 967-5832
Benton_Martin@fd.org

SHALAKA PHADNIS
NOAH BARON
Asian Americans Advancing Justice |
AAJC
1620 L St. NW
Ste. 1050
Washington, DC 20036
Telephone: (202) 296-2300
sphadnis@advancingjustice-aajc.org
nbaron@advancingjustice-aajc.org

*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT AND FEDERAL RULE OF APPELLATE PROCEDURE 29(a)(4)(E) STATEMENT

*Amici curiae* are not-for-profit corporations that have no parent corporation and no publicly-held corporation owns 10% or more of their stock.

No party's counsel authored this brief in whole or in part.

No party's counsel or any other person contributed money to fund preparing or submitting this brief.

/s/ Benton C. Martin
Benton C. Martin
Dated: June 9, 2026

# TABLE OF CONTENTS

STATEMENT OF INTEREST OF *AMICUS CURIAE* ...............................................1

SUMMARY OF ARGUMENT ......................................................................................2

ARGUMENT ...............................................................................................................5

    I.    **THE PANEL MAJORITY SHOULD HAVE INVITED SUPPLEMENTAL BRIEFING AND HELD ARGUMENT ON THE CONSTITUTIONAL QUESTION, WHICH WAS NOT DECIDED BY THE DISTRICT COURT NOR ARGUED BY THE GOVERNMENT ON APPEAL** ........................................................................................5

    II.   **EN BANC REVIEW WOULD ENSURE THE COURT BENEFITS FROM EXPERTISE THAT INFORMED THE SECOND CIRCUIT'S DECISION IN *FARHANE*** ........................................................................8

CONCLUSION ..........................................................................................................12

CERTIFICATE OF COMPLIANCE ................................................................... COC

CERTIFICATE OF SERVICE ..............................................................................COS

TOC

**TABLE OF AUTHORITIES**

**Cases**

*Byrd v. Haas*, 17 F.4th 692 (6th Cir. 2021) ..........................................................3, 5

*Chaidez v. United States*, 568 U.S. 342 (2013)........................................................2

*Citizens Coal Council v. U.S. E.P.A.*, 447 F.3d 879 (6th Cir. 2006) ..........................7

*Cutter v. Wilkinson*, 544 U.S. 709 (2005) ...............................................................3

*Farhane v. United States*, 121 F.4th 353 (2d Cir. 2024) (en banc) .................. *passim*

*Keeley v. Whitaker*, 910 F.3d 878 (6th Cir. 2018)....................................................2

*Lee v. United States*, 582 U.S. 357 (2017) ...............................................................2

*Margolin v. NAIJ*, 608 U.S. ___, 146 S. Ct. 1285 (2026)...........................................5

*Maslenjak v. United States*, 582 U.S. 335 (2017).....................................................11

*Padilla v. Kentucky*, 559 U.S. 356 (2010)................................................. 2, 9, 10, 12

*Singleton v. Wulff*, 428 U.S. 106 (1976)................................................................5, 6

*Terry v. Tyson Farms*, 604 F.3d 272 (6th Cir. 2010) ................................................7

*United States v. Games-Perez*, 695 F.3d 1104 (10th Cir. 2012)................................7

*United States v. Sineneng-Smith*, 590 U.S. 371 (2020)..............................................5

*United States v. Singh*, 174 F.4th 998 (6th Cir. 2026).................................... *passim*

*Washington Energy Co. v. US*, 94 F.3d 1557 (Fed. Cir. 1996)..................................7

**Statutes and Rules**

8 U.S.C. § 1451(a) .................................................................................11

6th Cir. I.O.P. 40(b)(1) .............................................................................8

**Other Authorities**

*ABA Criminal Justice Standards for the Defense Function* (4th ed. 2017).............10

Br. of Asian Americans Advancing Justice, *Farhane v. United States*, No. 20-1666 (2d Cir.), ECF 236.................................................................3, 11

Br. of Immigrant Defense Project, *Farhane v. United States*, No. 20-1666 (2d Cir.), ECF 228 ...............................................................................3

Br. of National Association of Criminal Defense Lawyers, *Farhane v. United States*, No. 20-1666 (2d Cir.), ECF 249........................................ 3, 9, 10

Br. of Professors of Criminal Law, Criminal Procedure, and Immigration Law, *Farhane v. United States*, No. 20-1666 (2d Cir.), ECF 231 .......................3, 10, 11

Colleen Long, et al., *Trump administration working to expand effort to strip citizenship from foreign-born Americans*, NBC News (Feb. 12, 2026), https://perma.cc/X2XG-MUFN .........................................................12

TOA

## STATEMENT OF INTEREST OF AMICI CURIAE[1]

National Association of Criminal Defense Lawyers ("NACDL") is a nonprofit voluntary professional bar association that works on behalf of criminal defense attorneys to ensure justice and due process for those accused of crimes or misconduct. NACDL was founded in 1958. It has a nationwide membership of many thousands of direct members, and up to 40,000 with affiliates. NACDL's members include private criminal defense lawyers, public defenders, military defense counsel, law professors, and judges. NACDL is the only nationwide professional bar association for public defenders and private criminal defense lawyers. NACDL files numerous amicus briefs each year in the U.S. Supreme Court and other federal and state courts in cases that present issues of broad importance to criminal defendants, criminal defense lawyers, and the criminal justice system.

Asian Americans Advancing Justice | AAJC ("Advancing Justice-AAJC") is a nonprofit, nonpartisan organization that seeks to create an equitable society for all. Advancing Justice-AAJC works to further civil and human rights and empower Asian American communities through organization, education, advocacy, and litigation. Advancing Justice-AAJC is a leading expert on issues of importance to

---

[1] Appellant's counsel consents to the filing of this brief, and the government's counsel does not oppose.

the Asian American community, including immigrant rights and naturalization law and policy.

Immigrant Defense Project ("IDP") is a nationally recognized nonprofit legal resource and training center. IDP advises and trains criminal defense and immigration lawyers nationwide, and immigrants themselves, on issues involving the immigration consequences of criminal convictions. IDP regularly appears as *amicus curiae* on matters of criminal-immigration law and the rights of noncitizens accused and convicted of crimes. *See, e.g.*, *Farhane v. United States*, 121 F.4th 353 (2d Cir. 2024) (*en banc*); *Lee v. United States*, 582 U.S. 357 (2017); *Chaidez v. United States*, 568 U.S. 342 (2013); *Padilla v. Kentucky*, 559 U.S. 356 (2010); *Keeley v. Whitaker*, 910 F.3d 878, 885 n.9 (6th Cir. 2018) (citing "well-drafted amici brief" filed by IDP and two other organizations).

Amici are dedicated to defending the rights of individuals accused of crimes, including ensuring they are informed of the consequences of denaturalization and deportation, among the most severe penalties one can face. Amici submitted multiple, detailed amicus briefs before the Second Circuit in *Farhane*, offering expertise that informed the en banc court's conclusion. The panel majority here rejected *Farhane*'s conclusion without similar briefing. Amici have an interest in ensuring that this Court, like the Second Circuit, takes their expertise into

2

consideration in deciding this issue of constitutional importance and wide-ranging consequences.

## SUMMARY OF ARGUMENT

This appellate body is "a court of review, not of first view." *Byrd v. Haas*, 17 F.4th 692, 700 (6th Cir. 2021) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005)). But the panel majority lost sight of that proper role here. Without requesting supplemental briefing or even hearing argument, the panel majority issued sweeping precedent on a weighty issue not passed on by the district court nor even raised by the government in its appeal brief: whether the constitution ensures that naturalized U.S. citizens receive proper advice about the risk of denaturalization and deportation before entering a plea, as it unquestionably does for noncitizens. In answering that question in the negative, the panel majority cabined the Sixth Amendment in a manner not sought by the government. And it created a new circuit split without the benefit of the robust briefing and argument that informed the Second Circuit's contrary decision in *Farhane*, including extensive briefing by amici here. *Farhane v. United States*, 121 F.4th 353 (2d Cir. 2024) (*en banc*).[2]

---

[2] *See Farhane v. United States*, No. 20-1666 (2d Cir.), ECF 228 (Br. of IDP); ECF 236 (Br. of AAJC); ECF 249 (Br. of NACDL, et al.); *see also* ECF 231 (Br. of Professors of Criminal Law, Criminal Procedure, and Immigration Law).

Amici agree with Mr. Singh that the panel majority got it wrong on the merits. They also agree that determining the scope of the Sixth Amendment for naturalized U.S. citizens is extraordinarily important, affecting the constitutional rights of thousands of people in this Circuit. Amici submit this brief to offer a preliminary explanation of why the Court would benefit from full briefing and argument on this issue, which was not addressed by the district court below. In particular, as briefing in *Farhane* showed, the panel majority here was wrong to assume that defense attorneys are unable to advise their clients on the denaturalization consequences of a given plea when amici NACDL's defense attorney members do so regularly. Additionally, the panel majority wrongly stated that denaturalization proceedings are attenuated from any conviction. In fact, a conviction is often the sole or primary evidence the government relies upon for denaturalization.

In short, proper resolution of the Sixth Amendment question would benefit from robust briefing and argument, which the panel majority curtailed. Amici respectfully urge the Court to grant rehearing en banc to permit full briefing on this issue, or, alternatively, vacate and remand for the district court to consider it in the first instance.

4

## ARGUMENT

### I. THE PANEL MAJORITY SHOULD HAVE INVITED SUPPLEMENTAL BRIEFING AND HELD ARGUMENT ON THE CONSTITUTIONAL QUESTION, WHICH WAS NOT DECIDED BY THE DISTRICT COURT NOR ARGUED BY THE GOVERNMENT ON APPEAL

The panel majority chose to issue a sweeping opinion on the scope of the Sixth Amendment and create a new circuit split, when that issue was neither decided by the district court nor argued by the government on appeal. "It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). That rule helps preserve the proper role of appellate courts as bodies of review, not first view. *Byrd*, 17 F.4th at 700. Together with waiver and forfeiture doctrines, this limiting principle also ensures that courts decide only the issues actually litigated and necessary to the case, rather than those not in controversy. *See United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020) ("Courts are essentially passive instruments of government . . . . They wait for cases to come to them, and when cases arise, courts normally decide only questions presented by the parties." (cleaned up)); *Margolin v. NAIJ*, 608 U.S. ___, 146 S. Ct. 1285, 1288 (2026) ("Federal courts are not 'roving commissions,' licensed to 'sally forth each day looking for wrongs to right.'" (cleaned up)).

5

The panel majority overstepped that proper role here. The district court's denial of Singh's *coram nobis* and motion to reconsider did not reach the scope of defense attorneys' Sixth Amendment duties. And in its briefing on appeal, the government did not challenge *Farhane*'s conclusion or the general applicability of the Sixth Amendment. Instead, it argued only that the district court's reasoning was "unaffected by *Farhane*" for other reasons. Appellee Br., ECF 14, at 7.

Nevertheless, without requesting supplemental briefing or holding oral argument, the panel majority dove headlong into the far-reaching question whether defense counsel has a Sixth Amendment duty to advise naturalized citizens about the risk of denaturalization and deportation. And without the benefit of briefing, oral argument, or the district court's analysis of that question, the panel majority asserted its own reason why it believed *Farhane* was incorrect: the "direct-collateral distinction." *Singh v. United States*, 174 F.4th 998, 1002 (6th Cir. 2026). That principle appears nowhere in the decision below or the briefing on appeal, and Singh did not have a chance to counter it before this Court. Nor did amici, who have relevant expertise. *See* Point II, *infra*. As a result, the panel issued the kind of surprise ruling the Supreme Court has instructed appellate courts to avoid. *See Singleton*, 428 U.S. at 120. If the panel majority believed the Sixth Amendment question was necessary to resolve this case, it should have invited supplemental

6

briefing or remanded for the district court to consider and allow the parties to address it in the first instance.

The panel majority's overreach is made worse by its creation of an unnecessary circuit split. This Court does "not create conflicts among the circuits without strong cause." *Terry v. Tyson Farms*, 604 F.3d 272, 278 (6th Cir. 2010) (quoting *Washington Energy Co. v. United States*, 94 F.3d 1557, 1561 (Fed. Cir. 1996)). Avoiding unnecessary circuit splits "furthers the legitimacy of the judiciary and reduces friction flowing from the application of different rules to similarly situated individuals based solely on their geographic location." *United States v. Games-Perez*, 695 F.3d 1104, 1115 (10th Cir. 2012) (Murphy, J., concurring in denial of rehearing en banc). The panel majority exhibited no such hesitancy here. Its decision categorically denies a constitutional right to naturalized citizens within this Circuit that is guaranteed to those who live elsewhere. The Court should take this case en banc to correct the panel majority's misstep. *See Citizens Coal Council v. U.S. E.P.A.*, 447 F.3d 879, 905 (6th Cir. 2006) (en banc) (noting the court granted en banc review "precisely to vacate the panel majority's sua sponte determination of . . . unbriefed issues").

## II.    EN BANC REVIEW WOULD ENSURE THE COURT BENEFITS FROM EXPERTISE THAT INFORMED THE SECOND CIRCUIT'S DECISION IN *FARHANE.*

The robust briefing and argument leading to the Second Circuit's thoughtful decision in *Farhane*—in which present amici participated—starkly contrasts with the path taken by the panel majority here. Indeed, one look at *Farhane* establishes that the Sixth Amendment issue is exceptionally important, engenders significant public interest, and justifies en banc intervention to correct the panel's errors. *See* 6th Cir. I.O.P. 40(b)(1).

In contrast to this case, *Farhane* included extensive briefing and argument on the question of naturalized U.S. citizens' rights to legal counsel about the immigration consequences of a criminal plea. At the district court, the Sixth Amendment issue was fully argued and decided. *See Farhane*, 121 F.4th at 362. That put Farhane and other interested parties on notice. In multiple rounds of briefing and oral argument before the panel and the en banc court, Farhane and the government squarely addressed the scope of the Sixth Amendment. At the panel and en banc stages, the court also benefitted from multiple amicus briefs representing more than 10 different organizations. Amici included 11 professors of criminal law, criminal procedure and immigration law; federal public defender offices for every jurisdiction within the Second Circuit; New York state public defenders; and current amici NACDL, a national organization representing

criminal defense lawyers, as well as IDP and Advancing Justice-AAJC, experts on legal and policy issues affecting immigrants and naturalized U.S. citizens. *See id.* at 356. The intense interest and potentially wide-ranging applications of the scope of the Sixth Amendment duty shows it to be an exceptional issue that merits further consideration than the panel gave it here.

The expertise offered by amici in *Farhane* helps explain why the panel majority was wrong to find denaturalization and deportation is a "collateral consequence" not covered by the Sixth Amendment. Those briefs explain how the panel majority's decision conflicts with the Supreme Court's decision in *Padilla v. Kentucky,* 559 U.S. 356 (2010). They also directly rebut unwarranted assumptions relied upon by the panel majority in this case. Two examples are illustrative:

First, the panel majority here stated that applying the direct-collateral distinction was important to "account[] for the practical limitations on [defense] lawyers' skill and knowledge," which it found was limited to criminal law. *Singh*, 174 F.4th at 1002. But the Supreme Court already indicated that such a limited view of criminal defense attorneys' role in advising defendants is misplaced, and that counsel must advise a non-citizen defendant on any risk of deportation that may be a consequence of pleading guilty. *Padilla,* 559 U.S. at 374. Indeed, as the brief from amicus NACDL, which represents tens of thousands of defense attorneys, told the Second Circuit: their members across the country "regularly

9

advise their clients on a slew of serious immigration consequences." Br. of NACDL, et al., *Farhane v. United States*, No. 20-1666 (2d Cir.), ECF 249, at 5. And following *Padilla*, NACDL and other defender organizations "have trained their members and staff on a wide range of immigration consequences—including denaturalization." *Id.* at 8. Their efforts accord with American Bar Association Criminal Justice Standards, which require defense counsel to advise on "all" immigration consequences that might follow from a conviction. *Id.* (citing *ABA Criminal Justice Standards for the Defense Function* (4th ed. 2017), Standard 4-5.5); *see also Padilla,* 559 U.S. at 367 (considering "[t]he weight of prevailing professional norms"). Contrary to the panel majority's suggestion that its decision was protective of defense attorneys, organizations representing those attorneys explained that resurrection of the direct-collateral distinction actually creates *more* confusion and undermines their ability to ethically advise clients. *Id.* at 14-15.

Second, the panel majority distinguished *Padilla* by stating that denaturalization is "not as closely connected to a conviction as deportation" because while deportation flows directly from a conviction, denaturalization does not. *Singh*, 174 F.4th at 1005. That is wrong. As a brief filed by law professors explained to the Second Circuit, the government often pursues denaturalization based on a post-naturalization conviction for pre-naturalization conduct. *See* Br. of Law Professors, *Farhane v. United States*, No. 20-1666 (2d Cir.), ECF 231, at 12.

10

That's because the naturalization application asks, among other things: "Have you

EVER committed . . . a crime or offense for which you were NOT arrested?" *Id.* at

12 (citing *Maslenjak v. United States*, 582 U.S. 335, 346 (2017)). Thus, when a

defendant pleads guilty to criminal conduct that occurred before naturalization, it

often constitutes an admission that he lied on that question and is subject to

denaturalization. *See* 8 U.S.C. § 1451(a). "In a very real sense, then, the

defendant's conviction causes his denaturalization." *Id.* at 13; *see also Farhane*,

121 F.4th at 367-68 (conviction in this circumstance creates "nearly . . . automatic"

risk of denaturalization and makes it "provably easier" for the government to

denaturalize (internal quotations omitted)). The panel majority's categorical

decision ignores this direct connection.

The issue decided here is of crucial importance to the millions of naturalized

U.S. citizens in this country. Most would be surprised to learn that a guilty plea

decades after naturalization can result in revocation of citizenship and banishment

from this country for the defendant and even for family members who derived

citizenship through them. As amicus Advancing Justice-AAJC explained to the

Second Circuit, "the long and complex naturalization process contributes to

naturalized citizens' perception that citizenship is final and cannot be undone." Br.

of AAJC, *Farhane v. United States*, No. 20-1666 (2d Cir.), ECF 236, at 4. But that

widespread perception is mistaken. Defense attorneys should be expected to inform

11

their clients about the law and the true consequences of a plea. Given the government's recent escalation of denaturalization efforts,[3] the stakes for scores of U.S. citizens have never been higher.

Amici respectfully submit that the Sixth Amendment, as interpreted by the Supreme Court in *Padilla*, affords naturalized citizens the same right to be advised of the potential immigration consequences of a plea as it does for noncitizens. The panel majority's contrary conclusion creates a new, unwarranted circuit split and is based on mistaken assumptions. At the very least, the panel majority should have ensured this issue was fully briefed by the parties and others with relevant expertise before issuing a precedent decision with such broad impact. En banc review is necessary to allow amici and other interested parties to submit further argument, and it will ensure the robust analysis this important issue demands.

---

[3] Colleen Long, et al., *Trump administration working to expand effort to strip citizenship from foreign-born Americans*, NBC News (Feb. 12, 2026), https://perma.cc/X2XG-MUFN.

## CONCLUSION

*Amici* respectfully submit that this Court should grant rehearing.

Dated: June 9, 2026                    Respectfully submitted,

ETAN NEWMAN                            */s/ Benton C. Martin*
NABILAH SIDDIQUEE                      BENTON C. MARTIN
MANUEL VARGAS                          *Sixth Circuit Vice-Chair,*
Immigrant Defense Project                 *Amicus Committee*
P.O. Box 1071                          *National Association of*
New York, NY 10008                        *Criminal Defense Lawyers*
Phone: (646) 760-0591                  Federal Community Defender
nabilah@immdefense.org                 613 Abbott Street, Suite 500
etan@immdefense.org                    Detroit, Michigan 48226
                                       Phone: (313) 967-5832
SHALAKA PHADNIS                        Benton_Martin@fd.org
NOAH BARON
Asian Americans Advancing Justice |
AAJC
1620 L St. NW
Ste. 1050
Washington, DC 20036
Telephone: (202) 296-2300
sphadnis@advancingjustice-aajc.org
nbaron@advancingjustice-aajc.org

*Counsel for Amici Curiae*

13

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(a)(7)(C) & 29(b), and Sixth Circuit Local

Rule 32(a), I certify that the attached brief is proportionately spaced, has a typeface

of 14 points or more, and contains 2,599 words.

Date: June 9, 2026          /s/ *Benton C. Martin*

COC

# **CERTIFICATE OF SERVICE**

I, Benton C. Martin, hereby certify that on June 9, 2026, I electronically filed the foregoing *Amicus Curiae* Brief with the Clerk of the Court of the United States Court of Appeals for the Sixth Circuit using the CM/ECF system, which will send service of this document to all counsel of record.

Date: June 9, 2026        <u>/s/ Benton C. Martin</u>

COS