No. 25-1523

In the United States Court of Appeals
for the Sixth Circuit

**United States of America,**

Plaintiff-Appellee,

v.

**Karnail Singh,**

Defendant-Appellant.

On Appeal from the United States District Court
for the Eastern District of Michigan
No. 13-cr-20551 (Hon. David M. Lawson)

United States' Response in Opposition to
Petition for Rehearing En Banc

Jerome F. Gorgon Jr.
United States Attorney

Jessica V. Currie
Assistant United States Attorney
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9531
Jessica.Currie@usdoj.gov

# Table of Contents

Table of Authorities.................................................................................ii

Introduction...........................................................................................1

Background..............................................................................................2

Reasons for Denying Rehearing...............................................................5

A.    The panel decision is consistent with Supreme Court
      precedent. ....................................................................................5

B.    This case does not present a question of exceptional
      importance.....................................................................................8

Conclusion ...........................................................................................10

Certificate of Service ...........................................................................11

Certificate of Compliance.....................................................................12

# Table of Authorities

**Cases**

*Betts v. Costco Wholesale Corp.*,
  558 F.3d 461 (6th Cir. 2009) ........................................................................9

*Chaidez v. United States*,
  568 U.S. 342 (2013) .................................................................................5, 6

*Farhane v. United States*,
  121 F.4th 353 (2d Cir. 2024) ................................................................ 1, 4, 9

*Howe v. City of Akron*,
  801 F.3d 718 (6th Cir. 2015) ......................................................................10

*King v. Dutton*,
  17 F.3d 151 (6th Cir. 1994) ..........................................................................5

*Padilla v. Kentucky*,
  559 U.S. 356 (2010) ............................................................................. 1, 6, 7

*Singh v. United States*,
  145 S. Ct. 167 (2024) ....................................................................................4

*Strickland v. Washington*,
  466 U.S. 668 (1984) ......................................................................................9

*United States v. Hollins*,
  70 F.4th 1258 (9th Cir. 2023) .......................................................................5

*United States v. Singh*,
  95 F.4th 1028 (6th Cir. 2024) ................................................................. 4, 10

**Statutes**

8 U.S.C. § 1451(a) ..........................................................................................6

**Rules**

Fed. R. App. P. 40(c) ......................................................................................5

Fed. R. Civ. P. 6(b)(2) ............................................................9

Fed. R. Civ. P. 59(e)..............................................................9

## **Other**

Transactional Records Access Clearinghouse
http://tracreports.org/reports/774/ (last visited June 26, 2026)............7

## Introduction

More than a decade after his criminal judgment became final, Singh seeks the extraordinary remedy of en banc review to resolve a shallow conflict between just two circuits. His petition should be denied.

This case concerns *Padilla v. Kentucky*, 559 U.S. 356 (2010), which held that the Sixth Amendment requires counsel to advise non-citizens of the risk of deportation before they plead guilty to a crime. Unlike other collateral consequences, deportation is a uniquely-linked and near-automatic consequence of a criminal conviction. That is not true for civil denaturalization, as the panel majority in this case properly recognized. Any contrary reasoning in the Second Circuit's decision in *Farhane v. United States*, 121 F.4th 353 (2d Cir. 2024) (en banc), presents no reason to revisit the panel's sound conclusion. Because the panel decision is consistent with *Padilla*, en banc review is not needed to maintain the supremacy of federal law. Nor does the issue present a question of exceptional importance in the context of this case. As the concurring judge reasoned, Singh's request for coram nobis relief must be denied, irrespective of the constitutional question. Op. 12.

## Background

Singh illegally entered the United States in the early 1990s and applied for asylum. But because he did not demonstrate a well-founded fear of persecution, the government denied his application and ordered him deported. Rather than comply, Singh submitted another asylum application using a different name and other false identifiers. Op. 2.

Meanwhile, Singh married an American citizen and applied for permanent-resident status using the false information in his second application. He claimed that he had never been denied an immigration benefit and had never provided false information on an immigration form. Neither was true. But the scheme worked—Singh was granted permanent-resident status. And by 2009, he was a naturalized citizen with a United States passport. (R.16: Plea Agreement, 41).

In 2013, when returning to the United States from Canada, Singh presented his fraudulently-procured passport to customs officers at the Ambassador Bridge port of entry in Detroit and lied by claiming to have never used another identity. Based on those events, Singh was charged in the Eastern District of Michigan with passport fraud and making false statements to federal agents. (R.3: Indictment, 1–4).

Singh pleaded guilty to passport fraud. But first, he was warned that, "in conjunction with possible future criminal charges, his guilty plea in this case may affect or even foreclose his eligibility to remain in this country." (R.16: Plea Agreement, 43). He agreed that his plea was "in no way conditioned upon or affected by" his lawyer's advice "regarding any potential immigration consequences." (*Id.*, 43–44). His decision was "wholly independent" of any "immigration consequences." (*Id.*, 44). And he knew that his guilty plea "[could] be used" to "bring a petition to cancel [his] citizenship." (R.22: Plea Hr., 127).

To support his plea, Singh admitted that, to become a citizen and obtain a passport, he knowingly failed to disclose that he was previously denied asylum. (*Id.*, 129–30). He took "full responsibility." (*Id.*, 138). And the court sentenced him to probation. (R.19: Judgment, 109–11).

Years later, in 2018, the government commenced denaturalization proceedings to revoke Singh's citizenship. (R.25-1: Complaint, 157–83). In support, the complaint relies on an array of deceptive acts predating Singh's 2009 naturalization. (*Id.*, 174–82). His guilty plea in this case "substantiate[d] his concealment and use of two identities," leaving him unable to "reasonably dispute his deceptive actions." Op. 3.

Singh then moved for coram nobis relief, seeking to have his conviction vacated. (R.25: Motion, 144–83). According to Singh, he was assured by counsel that he would remain a citizen if he pleaded guilty and did not commit another crime. (R.25-2: Affidavit, 184). The district court denied relief. (R.34: Order, 323–40). This Court affirmed, reasoning that Singh was not prejudiced by any misadvice. *United States v. Singh*, 95 F.4th 1028, 1033–34 (6th Cir. 2024). The Supreme Court denied certiorari. *Singh v. United States*, 145 S. Ct. 167 (2024).

Weeks later, the Second Circuit allowed a convicted defendant to advance an ineffective-assistance claim premised on the theory that a naturalized citizen must be advised that a guilty plea carries a risk of denaturalization. *Farhane v. United States*, 121 F.4th 353 (2d Cir. 2024) (en banc). Singh then moved to reconsider the denial of coram nobis relief under Rule 59(e). The court denied relief because the motion was untimely and any misadvice was not prejudicial. (R.64: Order, 486–97).

The panel affirmed. The majority held that "the Sixth Amendment doesn't require attorneys to advise naturalized citizens that a guilty plea may carry the risk of denaturalization and eventual deportation."

4

Op. 2. Judge Griffin, concurring in the judgment, would have affirmed on non-constitutional grounds. Op. 11.

## Reasons for Denying Rehearing

"Rehearing en banc is not favored[.]" Fed. R. App. P. 40(c). And there is no compelling reason to take that extraordinary measure here. The panel decision is consistent with Supreme Court precedent and presents a poor vehicle for further review due to several procedural problems and Singh's inability to satisfy *Strickland's* prejudice prong, which was already adjudicated in a prior appeal.

A. The panel decision is consistent with Supreme Court precedent.

For decades, courts have recognized the distinction between direct and collateral consequences of a criminal conviction when analyzing Sixth Amendment claims. *See Chaidez v. United States*, 568 U.S. 342, 351 (2013); *see also, e.g.*, *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994) (stating that "[t]he defendant need only be aware of the direct consequences of the plea" for purposes of the Sixth Amendment); *United States v. Hollins*, 70 F.4th 1258, 1264 (9th Cir. 2023) (reaffirming that a defendant must be advised "of the direct consequences of his guilty plea, but not those that are merely collateral").

In *Padilla*, the Supreme Court made one exception, "breaching the previously chink-free wall between direct and collateral consequences." *Chaidez*, 568 U.S. at 352–53. It did so because deportation, by its very nature, is "uniquely difficult to classify as either a direct or collateral consequence." *Padilla*, 559 U.S. at 357–60. For many crimes committed by non-citizens, deportation is nearly automatic—the conviction and the consequence are "enmeshed." *Id*. Thus, *Padilla* holds that the Sixth Amendment requires counsel to advise a non-citizen defendant of the risk of deportation before he pleads guilty. But it "did not eschew the direct-collateral divide across the board." *Chaidez*, 568 U.S. at 355.

Here, the panel majority recognized that counsel is *not* required to advise a naturalized citizen of the risk of denaturalization before he pleads guilty. Op. 7–10. A criminal conviction is neither necessary nor sufficient to warrant denaturalization. Unlike deportation, civil denaturalization is backward-looking and asks whether naturalization was "illegally procured" or "procured by concealment of a material fact or by willful misrepresentation." 8 U.S.C. § 1451(a). The defendant need not have been convicted of, or even charged with, a crime; the inquiry

6

instead centers on whether he concealed something or lied during the naturalization process.

Therefore, though deportation and denaturalization are both severe immigration-related actions, they differ in material ways. Denaturalization is a discretionary civil proceeding that depends on the defendant's conduct, not the criminal conviction itself. Thus, it is not difficult to classify denaturalization as collateral to the conviction, beyond the scope of the Sixth Amendment. The panel majority's reasoning is fully consistent with *Padilla*.

In a case like this—where the defendant admitted to deceptive acts by pleading guilty—collateral estoppel will ease the government's burden if it chooses to initiate denaturalization proceeding. But still, denaturalization is not a near-automatic consequence of conviction.

Denaturalization statistics reinforce the point. According to Singh's sources, the government has identified only 384 naturalized citizens whose citizenship it wants to revoke, Pet. 14–15, and one source identified only "166 denaturalization complaints" filed "from 2008 through June 12, 2026." http://tracreports.org/reports/774/. While the number of complaints is on the rise, denaturalization actions filed each

month are nowhere near the number of convictions of the 26 million naturalized U.S. citizens. *Id.* Nothing suggests that denaturalization is a near-automatic result of conviction.

Singh argues that deportation inevitably follows denaturalization, but that is not the relevant inquiry. Denaturalization is a necessary intervening step before deportation. Therefore, the relevant question to ask—the one consistent with *Padilla*—is whether denaturalization (and eventual deportation) is the near-automatic result of conviction. Clearly, it is not. Thus, the panel majority properly rejected any contrary reasoning in *Farhane*. Op. 9. The Second Circuit used flawed logic to equate a non-citizen's risk of deportation (which is a near-automatic consequence of conviction) to a naturalized citizen's risk of denaturalization (which does not even depend on conviction).

B. This case does not present a question of exceptional importance.

More than 15 years have passed since *Padilla* was decided, and this is the first case in which the issue has arisen in this circuit. Singh has not identified any reason to believe that the question is important enough in this circuit to warrant full-court review here. That is

particularly so because there are several non-constitutional grounds to affirm, making this case a poor vehicle for en banc review.

*First*, relief is time-barred. A motion to alter or amend judgment under Rule 59(e) "must be filed no later than 28 days after the entry of the judgment." This deadline cannot be extended. Fed. R. Civ. P. 6(b)(2). But here, Singh moved for Rule 59(e) relief more than two years after entry of judgment denying coram nobis relief. As the district court held, by then, Rule 59(e) relief was not available. (R.64: Order, 490).

*Second*, Singh did not have grounds to invoke Rule 59(e). The movant must show either "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 474 (6th Cir. 2009) (internal quotation marks omitted). Singh's reliance on *Farhane*, which is not controlling in this circuit, was not enough to satisfy Rule 59(e), as Judge Griffin correctly observed.

*Third*, even if Rule 59(e) could be invoked, Singh's motion would fail on the merits because he was not prejudiced. *Strickland v. Washington*, 466 U.S. 668 (1984). In deciding Singh's prior appeal, this Court held that his decision to plead guilty was not influenced by any

misadvice. *Singh*, 95 F.4th at 1034. And even when the district court warned Singh that a conviction could affect his citizenship, he pleaded guilty anyway. *Id*. Given those facts, this Court held in Singh's prior appeal that he could not show a reasonable probability that, but for any misadvice, the outcome would have changed. *Id*. That lack of prejudice is now "the law of the case." *Howe v. City of Akron*, 801 F.3d 718, 740 (6th Cir. 2015). Thus, Singh has no real chance at having his conviction vacated, even if he could convince the en banc court to adopt the Second Circuit's flawed reasoning. This, too, counsels against en banc review.

## Conclusion

Singh's petition for rehearing en banc should be denied.

Respectfully submitted,

Jerome F. Gorgon Jr.
United States Attorney

/s/ Jessica V. Currie
Jessica V. Currie
Assistant United States Attorney
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9531
Jessica.Currie@usdoj.gov

Dated: June 29, 2026

10

# Certificate of Service

I certify that on June 29, 2026, I caused this Response for the United States to be electronically filed with the Clerk of the United States Court of Appeals for the Sixth Circuit using the ECF system, which will send notification to all counsel of record.

/s/ Jessica V. Currie
Assistant United States Attorney

## Certificate of Compliance

I certify that the attached Response to Petition for Rehearing En Banc complies with the word limit in Rule 40(d)(3)(A) because it contains 1,848 words. It also complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface, using Microsoft Word, in 14-point Century Schoolbook.

/s/ Jessica V. Currie
Assistant United States Attorney